IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

RONALD E. GILLETTE                                                          PLAINTIFF

v.                                                                    No. 3:18CV106-DAS

CORE CIVIC, ET AL.                                                        DEFENDANTS

**MEMORANDUM OPINION**

This matter comes before the court on the *pro se* prisoner complaint of Ronald Gillette, who challenges the conditions of his confinement under 42 U.S.C. § 1983. For the purposes of the Prison Litigation Reform Act, the court notes that the plaintiff was incarcerated when he filed this suit. The plaintiff has brought the instant case under 42 U.S.C. § 1983, which provides a federal cause of action against "[e]very person" who under color of state authority causes the "deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. The defendants have moved [67] for summary judgment, arguing, *inter alia*, that Mr. Gillette did not exhaust the grievance process before filing the instant suit, as required under the Prison Litigation Reform Act. Mr. Gillette has responded to the motion, and the parties have provided additional briefing. For the reasons set forth below, the defendants' motion for summary judgment will be granted, and the instant case will be dismissed for failure to exhaust administrative remedies.

**Factual Allegations**

Mr. Gillette alleges that water leaks into his cell, causing mold and other problems which exacerbate his various medical conditions. He also alleges that the temperature in his cell during the relevant period is unreasonably cold. In addition, he alleges that mentally ill prisoners have been improperly housed with other inmates, which greatly disrupts life for those inmates. According to Mr.

Gillette, these problems, in various forms, have existed since February 15, 2018, when he was transferred to the Tallahatchie County Correctional Facility in Tutwiler, Mississippi.

**Failure to Exhaust Administrative Remedies**

The documents the parties have provided reveal that the plaintiff did not exhaust the prison grievance process before filing the instant suit. Congress enacted the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. §1997e *et seq.* – including its requirement that inmates exhaust their administrative remedies prior to filing suit – in an effort to address the large number of prisoner complaints filed in federal courts. *See Jones v. Bock*, 549 U.S. 199, 202 (2007). Congress meant for the exhaustion requirement to be an effective tool to help weed out the frivolous claims from the colorable ones:

> Prisoner litigation continues to 'account for an outsized share of filings' in federal district courts. *Woodford v. Ngo*, 548 U.S. 81, 94, n. 4, 126 S.Ct. 2378 (2006) (slip op., at 12, n.4). In 2005, nearly 10 percent of all civil cases filed in federal courts nationwide were prisoner complaints challenging prison conditions or claiming civil rights violations. Most of these cases have no merit; many are frivolous. Our legal system, however, remains committed to guaranteeing that prisoner claims of illegal conduct by their custodians are fairly handled according to law. The challenge lies in ensuring that the flood of non-meritorious claims does not submerge and effectively preclude consideration of the allegations with merit. *See Neitzke v. Williams*, 490 U.S. 319, 327, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989).
>
> Congress addressed that challenge in the PLRA. What this country needs, Congress decided, is fewer and better prisoner suits. *See Porter v. Nussle*, 534 U.S. 516, 524, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002) (PLRA intended to "reduce the quantity and improve the quality of prisoner suits"). To that end, Congress enacted a variety of reforms designed to filter out the bad claims and facilitate consideration of the good. Key among these was the requirement that inmates complaining about prison conditions exhaust prison grievance remedies before initiating a lawsuit.

*Jones v. Bock*, 549 U.S. 199, 203 (2007).

The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. §1997e(a), requires prisoners to exhaust any available prison administrative remedies prior to filing suit under 42 U.S.C. §1983. The exhaustion requirement protects administrative agency authority, promotes

efficiency, and produces "a useful record for subsequent judicial consideration." *Woodford v. Ngo*, 548 U.S.81, 89 (2006). A prisoner cannot satisfy the exhaustion requirement "by filing an untimely or otherwise procedurally defective administrative grievance or appeal" because "proper exhaustion of administrative remedies is necessary." *Woodford v. Ngo*, 548 U.S. 81, 83-84 (2006); see also *Johnson v. Ford*, 261 F. App'x 752, 755 (5th Cir. 2008)( the Fifth Circuit takes "a strict approach" to the PLRA's exhaustion requirement)(*citing Days v. Johnson*, 322 F.3d 863, 866 (5th Cir. 2003)); *Lane v. Harris Cty.Med.Dep't*, No. 06-20935, 2008 WL 116333, at *1 (5th Cir. Jan.11,2008)( under the PLRA, "the prisoner must not only pursue all available avenues of relief; he must also comply with all administrative deadlines and procedural rules"). Indeed, "a prisoner must now exhaust administrative remedies even where the relief sought – monetary damages – cannot be granted by the administrative process." *Booth v. Churner*, 532 U.S. 731, 739 (2001).

The requirement that claims be exhausted prior to the filing of a lawsuit is mandatory. *Gonzalez v. Seal*, 702 F.3d 785 (5th Cir.2012). "Whether a prisoner has exhausted administrative remedies is a mixed question of law and fact." *Dillon v. Rogers*, 596 F.3d 260, 266 (5th Cir. 2010). As "exhaustion is a threshold issue that courts must address to determine whether litigation is being conducted in the right forum at the right time, . . . judges may resolve factual disputes concerning exhaustion without the participation of a jury." *Id.* at 272. The Supreme Court has also recognized the need for a prisoner to face a significant consequence for deviating from the prison grievance procedural rules:

> The benefits of exhaustion can be realized only if the prison grievance system is given a fair opportunity to consider the grievance. The prison grievance system will not have such an opportunity unless the grievance complies with the system's critical procedural rules. A prisoner who does not want to participate in the prison grievance system will have little incentive to comply with the system's procedural rules unless noncompliance carries a sanction . . . .

*Woodford* at 95.

The defendants attached a copy of the CoreCivic grievance procedures as Exhibit A to the instant motion for summary judgment. Doc. 67-1. Paragraph K of that document states that, "[w]ith the exception of emergency grievances, inmates/residents are *required* to utilize the informal resolution process concerning questions, disputes, or complaints prior to the submission of a formal grievance." Doc. 67-1 at 8 (emphasis added). Inmates must begin the informal grievance process by submitting a 14-5A Informal Resolution form. *Id.* The deadline for the prison administration to complete the Informal Resolution process is 15 calendar days from the date the inmate submitted the form. *Id*. at 9. The facility must keep a copy of the 14-5A form and present a copy to the inmate.

Inmates at the Tallahatchie County Correctional Facility may also use the Emergency Grievance procedure "[i]f the subject matter of the grievance is such that compliance with the regular time guidelines would subject the inmate/resident to risk of personal injury." *Id.* at 10. An inmate must initiate that process on a 14-5B Inmate/Resident Grievance Form. However, the Grievance Officer must conduct an initial review of each Emergency Grievance to determine whether "the grievance is of an Emergency Nature." *Id*. If it is of an emergency nature, then the process continues. If it is not, then the process stops there, unexhausted. In order to exhaust the grievance process, Mr. Gillette must complete either the Emergency Grievance process or the Formal Grievance process, including the appeal process. Doc. 67-1 at 11-14.

In the present case, Mr. Gillette did not initiate and complete the grievance process as to any of his claims in the present case. In order to exhaust the grievance process at TCCF, Mr. Gillette must initiate and complete either the Emergency Grievance process or the Formal Grievance process. As the defendants noted, "While [Gillette] utilized the administrative grievance procedure at TCCF to submit various complaints, [he] did not file a single grievance related to the allegations in this

lawsuit." Doc. 69 at 7. Mr. Gillette argued in his supplemental briefing that, "[t]here were many times when [he] would make verbal complaints in an effort to speed up the process." Doc. 79 at 3. Verbal complaints do not, however, served to exhaust the grievance process. Mr. Gillette also argued that, given the various problems he faced with the rainwater leakage, mildew smell, and cold air, "any possible reasonable remedy or redress would not likely see light before a serious physical health harm, injury, or death be the end result." *Id*.

Mr. Gillette then allegedly submitted an Emergency Grievance because he believed that "there were valid complaints needing prompt attention." *Id*. at 3-4. However, "[t]hose grievances [were] returned" with instructions to file an Informal Resolution form, instead. *Id*. at 4. It appears that the Grievance Officer returned the grievance to Mr. Gillette because it did not meet the criteria of being so serious "that compliance with the regular time guidelines would subject the inmate/resident to risk of personal injury," as set forth in the grievance policy. According to Mr. Gillette, he had submitted an Informal Grievance "without any response whatsoever." *Id*. However, the Grievance Coordinator, Tanya Brown, submitted a sworn statement averring that "none of the grievances submitted by Gillette relate to the events alleged in this lawsuit." Doc. 67-1 at 2.

Thus, the grievance office processed various grievances for Mr. Gillette, none of which involved the events giving rise to the instant case. If, as Mr. Gillette alleges, he filed an Informal Resolution form, but got no response, then he could have proceeded to the Formal Grievance process – in compliance with the written procedure – as the total time allotted for the Informal Resolution process is "fifteen (15) calendar days from the date the [Informal Resolution form] was submitted." Doc. 67-1 at 9. If he had not received a response by that time, then he could have moved forward with the next step of the procedure: the Formal Grievance process. If he had chosen to, Mr. Gillette could

have bypassed or even terminated the informal resolution process to begin the Formal Grievance procedure:

> IN THE EVENT A DETAINEE DECIDES TO BYPASS THE INFORMAL GRIEVANCE PROCESS, THE DETAINEE WILL HAVE SEVEN (7) CALENDAR DAYS FROM THE DATE OF THE ALLEGED INCIDENT TO FILE A FORMAL GRIEVANCE. THE TIME FOR FILING BEGINS FROM THE DATE THE PROBLEM OR INCIDENT BECAME KNOWN TO THE DETAINEE. IN THE EVEN A DETAINEE TERMINATES THE INFORMAL RESOLUTION PROCESS, HE/SHE WLL HAVE SEVEN (7) CALENDAR DAYS FROM TERMINATING.

Doc. 67-1 at 11 (all capitals in original). He did not do so. As such, he failed to exhaust the grievance process as to all of the claims in the instant suit. For this reason, the instant case will be dismissed without prejudice for failure to exhaust administrative remedies.

**Conclusion**

For the reasons set forth above, the motion [67] by the defendants for summary judgment will be granted, and the instant case will be dismissed for failure to exhaust administrative remedies. A final judgment consistent with this memorandum opinion will issue today.

**SO ORDERED**, this, the 1st day of April, 2020.

/s/ David A. Sanders
DAVID A. SANDERS
UNITED STATES MAGISTRATE JUDGE